UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AVENTIS PHARMA DEUTSCHLAND ) <br> GMBH and KING PHARMACEUTICALS, ) <br> INC., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> COBALT PHARMACEUTICALS, INC., ) <br> ) <br> Defendant. ) <br> _____ ) | Civil Action No. 03-10492JLT |

## MEMORANDUM OF LAW OF
## AVENTIS PHARMA DEUTSCHLAND GMBH
## IN SUPPORT OF ITS MOTION TO DISQUALIFY
## GRAY CARY WARE & FREIDENRICH LLP

Plaintiff Aventis Pharma Deutschland GmbH ("Aventis Deutschland") submits this memorandum of law in support of its motion to disqualify the law firm of Gray Cary Ware & Freidenrich LLP ("Gray Cary") (including any and all of its partners and associates) from representing defendant Cobalt Pharmaceuticals, Inc. ("Cobalt") in this action. Furthermore, Aventis Deutschland respectfully moves this Court to revoke the *pro hac vice* admission of Steven A. Maddox.

### I. PRELIMINARY STATEMENT

This motion presents a straightforward application of the well-established ethical principle that prohibits a law firm from concurrently representing clients who are adverse to one another. Gray Cary has violated this principle by taking on the representation of Cobalt, which is directly adverse to its current client Aventis Pharmaceuticals, Inc. ("Aventis Pharmaceuticals"). Gray Cary's disqualification is required because:

BOS-623466 v6 5544511-0901

(1) Gray Cary has represented, and continues to represent, Aventis Pharmaceuticals in ongoing litigation and patent prosecution matters.

(2) Gray Cary's representation of Cobalt in this case against the German affiliate of its client, Aventis Pharmaceuticals, is directly adverse to Aventis Pharmaceuticals itself in two respects. First, in this patent infringement case, Cobalt is seeking to sell an infringing generic pharmaceutical product to compete against a product sold in the United States by plaintiff King Pharmaceuticals, Inc. ("King") pursuant to a license agreement with Aventis Deutschland *and Aventis Pharmaceuticals*, as well as a manufacturing agreement under which *Aventis Pharmaceuticals* manufactures the finished product for King. Second, reflecting Aventis Pharmaceuticals's substantial stake, Aventis Pharmaceuticals controls and supervises Aventis Deutschland's conduct in this litigation and pays the legal fees of Aventis Deutschland's counsel in this case. Cobalt, through its counsel, in fact, treated Aventis Pharmaceuticals as an adverse party by soliciting discovery from it. Aventis Pharmaceuticals likewise controls and supervises the conduct of Gray Cary's work in antitrust litigations and patent prosecution, and pays its legal fees in those matters.

(3) Gray Cary has not inquired with its client, Aventis Pharmaceuticals, about that client's evident interest in this litigation and has not asked for Aventis Pharmaceuticals's consent to the Cobalt representation. In any event, Aventis Pharmaceuticals does not consent to Gray Cary's proposed representation of Cobalt.

(4) Any ethical screen implemented by Gray Cary would not resolve the conflict, because an ethical screen cannot cure conflicts arising from concurrent representation of adverse clients. Even if the mechanism of screening were available (which it is not), it would not adequately address risks to the Gray Cary clients posed by the concurrent representations.

2

## II. STATEMENT OF FACTS

A.   **Aventis**

Aventis S.A., a French stock company, is a global pharmaceutical corporation with subsidiaries operating in nearly 100 countries around the world. Walter Decl. Ex. B at 4.[1] The subsidiaries conduct the company's prescription drug and human vaccines business in their respective markets. *Id.* The principal operating subsidiaries engaged in the prescription drug business are in the United States, France, Germany and Japan. *Id.* Aventis Pharmaceuticals is the U.S. operating subsidiary of Aventis S.A., and Aventis Deutschland is the German operating subsidiary. *Id.*

As stated in Aventis's 2002 Sustainability Report, "[t]he business functions Finance, Legal, Communications, Commercial Operations, Drug Innovation & Approval, Human Resources, Industrial Operations and Information Solutions are organized globally." *Id.* Of particular importance to this motion to disqualify is that Aventis's departments of Global Patent Administration and Global Patent Litigation, both located at the offices of Aventis Pharmaceuticals in Bridgewater, New Jersey, are responsible for patent preparation, prosecution, and litigation for Aventis entities worldwide. Dahling Decl. ¶¶ 4-6, 12.[2]

The organization of legal affairs within Aventis, as related to patent matters, is highly integrated. Specifically, the Global Patent Administration Department at Aventis Pharmaceuticals in New Jersey provides patent-related legal services and has responsibility for patent matters for both Aventis Pharmaceuticals and Aventis Deutschland. Dahling Decl. ¶ 4. Gerald V. Dahling, Senior Vice President Global Patents, whose office is at Aventis

---

[1]   "Walter Decl." refers to the Declaration of Sapna Walter.

[2]   "Dahling Decl." refers to the Declaration of Gerald V. Dahling.

3

Pharmaceuticals in Bridgewater, New Jersey, heads the Global Patent Administration Department and has direct supervisory responsibility for all patent groups within Aventis, including Aventis Pharmaceuticals and Aventis Deutshland. *Id.* ¶ 5. The U.S. Patent Department at Aventis Pharmaceuticals is, in fact, responsible for U.S. patent and licensing matters for all Aventis entities worldwide. Oehler Decl. ¶ 4.[3]

In addition, the Global Patent Litigation Department, also based in the offices of Aventis Pharmaceuticals in New Jersey, is responsible for world-wide patent-related litigations of virtually all Aventis entities worldwide, including patent litigations of Aventis Deutschland — and, specifically, this case. Dahling Decl. ¶¶ 6-8. That department also reports to Mr. Dahling. *Id.* ¶¶ 7-8.

### B.    Gray Cary's Representation of Aventis Pharmaceuticals

On its website, Gray Cary trumpets Aventis Pharmaceuticals as one of its "representative clients." Walter Decl. ¶ 4, Ex. A. This claim derives from two sources. First, Gray Cary currently represents Aventis Pharmaceuticals on several patent matters. Oehler Decl. ¶ 6. This work for Aventis Pharmaceuticals includes preparing and prosecuting patent applications relating to biotechnology before the U.S. Patent & Trademark Office. *Id.*

Second, Gray Cary also represents Aventis Pharmaceuticals in nine coordinated antitrust litigations in San Diego, California. Manardo Decl. ¶ 5.[4] These antitrust claims arise from the settlement of a patent infringement case relating to the pharmaceutical ciprofloxacin. *Id.* Gray Cary has made numerous court appearances, drafted motions, and taken depositions on behalf of Aventis Pharmaceuticals in these cases. *Id.* ¶ 7.

---

[3]    "Oehler Decl." refers to the Declaration of Ross J. Oehler.

[4]    "Manardo Decl." refers to the Declaration of Susan A. Manardo.

## C. This Action

Plaintiff Aventis Deutschland brought this patent infringement action against Cobalt on March 14, 2003, charging that Cobalt's filing of an Abbreviated New Drug Application for approval to market a generic version of the drug Altace® infringes U.S. Patent No. 5,061,722 (the "'722 Patent"). The '722 Patent covers the chemical compound ramipril, which is the active ingredient in Altace®. Aventis Deutschland is the owner of the '722 Patent and King is the exclusive licensee. Weber Decl. ¶¶ 5-6.[5] King markets Altace® in the United States pursuant to a three-way license agreement among King, Aventis Deutschland, and Aventis Pharmaceuticals. *Id.* ¶¶ 6-7. In addition, pursuant to a manufacturing agreement with King, Aventis Pharmaceuticals manufactures finished Altace® products for King, which remits payment for such manufacturing to Aventis Pharmaceuticals. *Id.* at ¶ 7.

Initially, the law firm of McDermott, Will & Emery appeared on behalf of Cobalt. On June 30, 2003, McDermott, Will & Emery withdrew as counsel. Steven A. Maddox and David L. Rosen, partners at McDermott, Will & Emery who had been responsible for this litigation, left that firm and joined Gray Cary. Gray Cary is now Cobalt's lead counsel in this case. Mr. Maddox was admitted *pro hac vice* in the U.S. District Court in Boston "subject to reconsideration if Plaintiff can show a conflict of interest." (Order dated July 7, 2003).

## D. The Direct Interest and Participation of Aventis Pharmaceuticals in this Case

Aventis Pharmaceuticals has a strong interest and is heavily involved in the instant action. It is not a formal party to this action only because it is not the holder or exclusive licensee of the patent, and therefore does not have standing to sue in this case. While patent holder Aventis Deutschland is a plaintiff here, its conduct in this litigation is directed and

---

[5] "Weber Decl." refers to the Declaration of Tanja Stephanie Weber.

5

supervised by Aventis Pharmaceuticals. The Global Patent Litigation Department at Aventis Pharmaceuticals in New Jersey is directly responsible for this litigation. Dahling Decl. ¶ 6. The two in-house Aventis attorneys in charge of the day-to-day conduct of the litigation are Michael Bankmann, patent counsel at Aventis Deutschland, and Carolyn Moon, Senior Director, Global Patent Litigation, at Aventis Pharmaceuticals in New Jersey. *Id.* ¶ 8. They report to the Vice President of Global Patent Litigation, who in turn reports to Mr. Dahling. *Id.*

Just as Aventis Pharmaceuticals pays Gray Cary's legal fees in the matters referred to in paragraph II.B. above, Aventis Pharmaceuticals pays the legal fees incurred in the prosecution of this case. The invoices for the legal services rendered by Kaye Scholer LLP and Kirkpatrick & Lockhart LLP in their representation of Aventis Deutschland and Aventis Pharmaceuticals in this case are sent to Aventis Pharmaceuticals, which pays them from a Global Patent Litigation budget that is administered by the head of the Global Patent Litigation Department at Aventis Pharmaceuticals in New Jersey, in consultation with Mr. Dahling. *Id.* ¶ 9.

Indeed, court papers submitted by Aventis Deutschland in this case — filed before Gray Cary took on its representation of Cobalt — demonstrate the involvement of Aventis Pharmaceuticals. In compliance with Local Rule 26.1(B), Mr. Dahling submitted to this Court a Sworn Statement as "Senior Vice President Global Patents, Aventis Pharmaceuticals, Inc. for Aventis Pharma Deutschland GmbH." *Id.* ¶ 10, Ex. A. Similarly, pursuant to Local Rule 16.1(D)(3), Mr. Dahling submitted a Certification to this Court as "Senior Vice President Global Patents, Aventis Pharmaceuticals, Inc. for Aventis Pharma Deutschland GmbH." *Id.* ¶ 10, Ex. B.

The involvement of Aventis Pharmaceuticals is not limited to its control and supervision of this litigation. It also has an interest in this lawsuit and in the drug that is the subject of the suit. The three-way license agreement among King, Aventis Deutschland, and Aventis

Pharmaceuticals grants King the right to market Altace® in the United States. Weber Decl. ¶ 6.[6] The same agreement treats Aventis Pharmaceuticals and Aventis Deutschland as a single entity and grants them rights to prosecute, control, and settle this litigation, as well as the right to share any damages awarded. *Id.* Moreover, pursuant to a separate manufacturing agreement between King and Aventis Pharmaceuticals, King pays Aventis Pharmaceutials to make Altace® products, the very products that are involved in this patent infringement suit. *Id.* ¶ 7.

Indeed, Cobalt itself has recognized that Aventis Pharmaceuticals is, in real terms, an adverse party in this case. In document requests and interrogatories served before the Court issued its initial scheduling order, Cobalt sought documents and information not only from Aventis Deutschland but from its affiliates as well — which, of course, includes its own client, Aventis Pharmaceuticals. Walter Decl. Exs. C at 2, D at 2.

### E.    Aventis Pharmaceuticals Has Not Consented to Gray Cary's Adverse Representation

Despite an obvious conflict of interest that should have been identified during a conflict check upon the hiring of Mr. Maddox by Gray Cary, the firm did not contact anyone at Aventis Pharmaceuticals to inquire about the circumstances surrounding Aventis Pharmaceuticals' involvement in this case or to seek its consent to allow Gray Cary to represent Cobalt. Aventis Pharmaceuticals has not given its consent and will not consent to Gray Cary's representation of Cobalt in this matter. Manardo Decl. ¶ 9; Oehler Decl. ¶ 7.

---

[6]     The agreement refers to Aventis Pharmaceuticals and Aventis Deutschland by their former names, Hoechst Marion Roussel, Inc. and Hoechst Marion Roussel Deutschland GmbH. Weber Decl. ¶ 6. Should the Court so desire, this agreement, as well as the manufacturing agreement between King and Aventis Pharmaceuticals, can be submitted to the Court subject to a confidentiality agreement and, as the Court may determine, an appropriate protective order.

### III. ARGUMENT

**A.  Gray Cary's Representation of Cobalt Is Directly Adverse to Its Current Client, Aventis Pharmaceuticals, And, Accordingly, Gray Cary Must Be Disqualified**

It is a fundamental proposition of the law of lawyering and legal ethics that a lawyer may not simultaneously represent Client A (Aventis) in one matter and C (Cobalt) in another case of C versus A, *even when the matters are completely unrelated.*[7] This fundamental precept is codified in Rule 1.7(a) of the Massachusetts Rules of Professional Conduct ("Mass. R. Prof. C."),[8] which prohibits, in the absence of each client's informed consent, concurrent representation of clients whose interests are directly adverse to one another. Rule 1.7(a) provides, in pertinent part, that

> A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
>
> a) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
>
> b) each client consents after consultation.[9]

Simply put, an attorney cannot simultaneously represent client A in one matter while representing client C who is adverse to client A in another matter without each client's consent. *McCourt Co. v. FPC Properties, Inc.*, 386 Mass. 145 (1982); *see also Ferguson Elec. Co. v. Suffolk Construction Co.*, 1998 Mass. Super. Lexis 289, at *7-8 (Mar. 20, 1998). The prohibition

---

[7]  Rotunda, Ronald D., Professional Responsibility, 5th ed., Black Letter Series, WestGroup, p. 60 (2001); *see also*, Hazard & Hodes, The Law of Lawyering, Third Edition, Volume I, § 10.2, p. 10-6 (2002); American Law Institute, Restatement of the Law Governing Lawyers, § 121.

[8]  The Massachusetts Rules of Professional Conduct have been adopted by the United States District Court, District of Massachusetts. *See*, Local Rule 83.6(4)(B), United States District Court, District of Massachusetts.

[9]  Mass. R. Prof. C. 1.7 is identical to the pre-2002 version of Rule 1.7 of the ABA Model Rules of Professional Conduct.

8

in Massachusetts also applies even if the two matters are unrelated. *McCourt*, 386 Mass. at 146 ("It is also irrelevant that the lawsuits are unrelated in subject matter and that it appears that client A will not in fact be prejudiced by the concurrent participation of the law firm in both actions.").

This stringent standard is required because Rule 1.7 is grounded in the fundamental duty of loyalty that a lawyer owes to a client. *See International Business Machines Corp. v. Levin*, 579 F.2d 271, 283 (3d Cir. 1978) ("An attorney who fails to observe his obligation of undivided loyalty to his client injures his profession and demeans it in the eyes of the public."); *McCourt*, 386 Mass. at 145 ("The undivided loyalty that a lawyer owes to his clients forbids him, without the clients' consent, from acting for client A in one action and at the same time against client A in another"); *British Airways, PLC v. Port Authority of New York*, 862 F. Supp. 889, 899 (E.D.N.Y. 1994) ("because the undivided loyalty owed to a client is of paramount importance, disqualification [under Rule 1.7] is appropriate").

The Rules of Professional Conduct have always emphasized the critical aspect of loyalty in the lawyer-client relationship. Comment [1] to Rule 1.7 states: "Loyalty is an essential element in the lawyer's relationship to a client." Comment [3] to Rule 1.7 states that: "As a general proposition, loyalty to a client prohibits undertaking representation directly adverse to that client without that client's consent." To make the point more emphatic, Comment [3] further states: "Thus, a lawyer ordinarily may not act as advocate against a person the lawyer represents in some other matter, *even if it is wholly unrelated*." (Emphasis added). The Comments to the ABA Rules of Professional Conduct adopted in 2002 also stress the duty of loyalty and elaborate on the concept to an even greater extent than in earlier versions of commentary. Comment [6] to Rule 1.7 of the new ABA Rules incorporates the statement from

9

the earlier Model Rule comment that says: "absent consent, a lawyer may not act as an advocate in one matter against a person the lawyer represents in some other matter, even when the matters are wholly unrelated." The new Comment [6] now includes the additional guidance that the "client as to whom the representation is directly adverse is likely to feel betrayed, and the resulting damage to the client-lawyer relationship is likely to impair the lawyer's ability to represent the client effectively."[10] Thus, the conflict of interest arising from concurrent representation in favor of, and adverse to, the interests of a client creates an unacceptable risk to the quality of the client-lawyer relationship with both the original and the new client and the effectiveness of the representation of both clients.

Here, Gray Cary has breached the undivided loyalty it owes to its client Aventis Pharmaceuticals by taking on a representation (Cobalt) that is directly adverse to Aventis Pharmaceuticals. As pointed out earlier, in paragraph II.D. above, although not a formal party to this action, Aventis Pharmaceuticals has a strong interest and a substantial involvement in the case. It manufactures the product at issue for King. It is a party to the license agreement under which the product is sold in the United States, which provides that all parties may share in any patent infringement damages awarded. As is obvious from the sworn statements placed before the Court, in patent litigation matters like the instant case, Aventis Pharmaceuticals is more than just another affiliate of Aventis Deutschland in the Aventis, S.A. family. Aventis Pharmaceuticals's relationship with Aventis Deutschland is so strong, and its interest in the case is so substantial, that it directs and supervises this case and pays counsel's fees.

---

[10] American Bar Association Model Rules of Professional Conduct, Rule 1.7, Comment [6], (2002).

Under similar circumstances, courts have treated such corporate affiliates like the Aventis entities here as a single client for the purpose of ruling on disqualification motions, premised on the application of the generic provisions of Rule 1.7. *See, e.g., Colorpix Sys. of Amer. v. Broan Mfg. Co.*, 131 F. Supp.2d 331, 336-37 (D. Conn. 2001) (granting defendant's motion to disqualify plaintiff's law firm because the law firm had represented defendant's parent and sister companies); *see also Teradyne v. Hewlett-Packard Co*, 1991 WL 239940, at *5 (N.D. Cal. June 6, 1991). In *Teradyne*, the court disqualified a law firm from concurrently representing a corporate parent and another client who was adverse to the subsidiary of the corporate parent. The court found that the parent's "control and supervision of the legal affairs of [the subsidiary] and its role in the retention and supervision of work of [the law firm] as outside counsel represents a significant identity of legal interest between the [subsidiary] and its parent." 1991 WL 239940, at *5. The court, therefore, concluded that the parent and the subsidiary should be treated as a "single client" for the purpose of determining conflicts. *Id.* The same reasoning applies here. As attested by Mr. Dahling, who is responsible for both the conduct of this patent infringement action and the patent matters in which Gray Cary is representing Aventis Pharmaceuticals, Gray Cary's representation of Cobalt is adverse to the interests of Aventis Pharmaceuticals. Dahling Decl. ¶ 13.

In the context of the Massachusetts Rules of Professional Conduct, as applied to this case, the fact that Aventis Pharmaceuticals and Aventis Deutschland have formal, separate corporate existences is beside the point. Comment [8] of Rule 1.7 makes clear that a representation adverse to a client's corporate affiliate without the client's consent is permitted only in the narrow circumstance when "the effect of the adverse representation is insignificant with respect to the other affiliate or the parent *and the management of the lawsuit is handled at completely*

11

*different levels of the enterprise.* But in many, perhaps most, cases, such concurrent representation will not be possible without consent of the parties." Mass. R. Prof. C. 1.7, Comment [8] (emphasis added). Here, the facts in the record show that the concurrent representation adverse to Aventis Pharmaceuticals is impermissible, as Comment [8] suggests. The legal and economic interests of Aventis Pharmaceuticals are directly impacted by the outcome of the litigation. Moreover, the management of this lawsuit is handled at the same level of the Aventis enterprise as the management of the Gray Cary matters, namely the Global Patent Administration and Litigation Departments reporting to Mr. Dahling in the Aventis Pharmaceuticals offices in Bridgewater, New Jersey.

**B.     There is No Evidence That Gray Cary Attempted to Determine Whether Its Representation of Cobalt Would Adversely Affect Its Relationship with Aventis Pharmaceuticals. Even It Had Done So, Gray Cary Cannot Reasonably Believe That the Cobalt Representation Would Not Damage its Relationship with Aventis Pharmaceuticals. In Any Event, Aventis Pharmaceuticals Does Not Consent to Gray Cary's Representation of Cobalt.**

When, as here, Gray Cary's representation of Cobalt is directly adverse to Aventis Pharmaceuticals, before Gray Cary can undertake a representation of Cobalt it must first determine that it "reasonably believes the representation will not adversely affect the relationship with the other client [Aventis Pharmaceuticals]." Mass. R. Prof. C. 1.7(a)(1). Only after it makes that determination may Gray Cary seek Aventis Pharmaceuticals's consent to its adverse representation.

It is clear from the facts set out in the declarations submitted to the Court that Gray Cary cannot reasonably believe that its representation of Cobalt will not adversely affect its relationship with Aventis Pharmaceuticals. First, the in-house counsel supervising the adverse parties are the same group of lawyers, who no doubt will wonder where Gray Cary's allegiance will lie. Second, Mr. Dahling, Senior Vice President, Global Patents at Aventis Pharmaceuticals,

had already submitted court papers in this case on behalf of Aventis Deutschland, alerting Gray Cary to its client's interest in this case. Dahling Decl. ¶ 10, Exs. A and B. Third, Aventis Pharmaceuticals is simultaneously paying Gray Cary to represent it while also paying counsel opposing Gray Cary in this case. *Id.* ¶ 9; Manardo Decl. ¶¶ 5-8; Oehler Decl. ¶ 6. Fourth, Gray Cary's Aventis client will reasonably have an ongoing concern that confidential information about its patents and patent prosecution matters may be revealed or improperly utilized, to the detriment of Aventis Pharmaceuticals.

Even if, contrary to the facts known to them and common sense, Gray Cary believed that by undertaking the Cobalt representation adverse to the interest of Aventis Pharmaceuticals it would not impair its relationship with Aventis Pharmaceuticals, it nonetheless was required to seek the consent of its client—Aventis Pharmaceuticals—to represent Cobalt. But Gray Cary made no effort even to consult with Aventis Pharmaceuticals, much less seek its consent, before a Gray Cary partner appeared in this case. Manardo Decl. ¶ 9; Oehler Decl. ¶ 7. And, in fact, Aventis Pharmaceuticals does *not* consent. *Id.* Hence, none of the conditions of Mass. R. Prof. C. 1.7(a) have been met. Accordingly, Rule 1.7 of the Massachusetts Rules of Professional Conduct requires that Gray Cary be disqualified from representing Cobalt in this case.

### C. Any Ethical Screen Cannot Resolve the Conflict Created by Gray Cary's Concurrent Representation of Adverse Clients

The conflict created by Gray Cary's simultaneous representation of Cobalt and Aventis Pharmaceuticals cannot be resolved by erecting any ethical screen between the Gray Cary lawyers working on this matter and the Gray Cary lawyers working on matters for Aventis Pharmaceuticals. Rule 1.10 of the Massachusetts Rules of Professional Conduct imputes disqualification to an entire law firm when any lawyer associated with the firm is disqualified from the representation under Rule 1.7. As Rule 1.10(a) states, "[w]hile lawyers are associated

13

in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rule 1.7."

Rule 1.10(d) provides for a screening mechanism to wall off a lawyer who *"previously represented a client whose interests are materially adverse"* to those of a current client. (Emphasis added.) By its terms, the Rule does not permit such screening for concurrent representation. As Comment [7] states, "the law firm may not represent a person with interests adverse to those of a *present* client of the firm, which would violate Rule 1.7." Mass. R. Prof. C. 1.10, Comment [7] (emphasis added). "There is simply no basis to accept the use of . . . screens in cases of concurrent representation" prohibited under Rule 1.7. *In re Cendant Corp. Securities Litigation*, 124 F. Supp.2d 235. 247 (D.N.J. 2000); *see also Smith & Nephew, Inc. v. Ethicon, Inc.*, 98 F. Supp.2d 106, 111 n.10 (D. Mass. 2000) (disqualifying the entire law firm, and finding that the attempt at erecting an ethical screen was "irrelevant"); *Allman v. Sears, Roebuck & Co., Allman v. Sears, Roebuck & Co.*, Civ. A. No. 87-6074 1988 WL 190109, *2 (E.D. Pa. Oct. 18, 1988) ("there is no precedent for applying a 'Chinese Wall' or 'Cone of Silence' to permit the continuation of simultaneous adverse representation.").

Moreover, the Gray Cary lawyers representing Cobalt in this matter and those working on patent matters for Aventis Pharmaceuticals are both located in its Washington, D.C. office. This office has only 20 lawyers, with just five partners in the Life Sciences group. Walter Decl. ¶ 4. One of those five partners in Washington is Dean Nakamura, who is handling patent matters for Aventis Pharmaceuticals. Oehler Decl. ¶ 6; Walter Decl. ¶ 4. Two other Washington partners, Mr. Maddox and Mr. Rosen, represent Cobalt in this litigation. Thus, even assuming *arguendo* that an ethical screen could resolve a conflict under Rule 1.7, it would not be effective here. *See C.K. Smith & Co., Inc. v. Edward C. Lee*, No. 920867E, 1996 WL 1186823, *3 (Mass. Super.

Apr. 29, 1996) (disqualifying firm based on attorney's *former* adverse representation; "concern[] about the efficacy of a Chinese wall" was warranted "given the small size of the litigation department").

This case differs significantly from *NFC, Inc. v. General Nutrition, Inc.*, 562 F. Supp. 332 (D. Mass. 1983), where the Court approved the use of a screen in a non-concurrent representation case. That case was decided on the basis of the then-controlling Canons of Professional Responsibility (Canons 4 and 9), rather than the new and arguably, as applied to this case, more stringent provisions of the current Rules of Professional Conduct (Rules 1.7 and 1.10). There, the court allowed a screening mechanism to wall off an attorney who had *previously* represented a client in his former firm from working on a matter adverse to that client in his current firm. The court reasoned that since the attorney would be in a different office (Detroit) from the office where the work was being done (Pittsburgh), he could easily be screened. 562 F.Supp. at 334. The Court recognized, however, that "[t]here should be, of course, no hesitation to disqualify a lawyer or law firm when such a step is necessary to meet the standards and purposes embodied in the Code of Professional Responsibility." *Id.* at 334.

Here, there is no alternative to disqualification. The lawyer who brought this case to Gray Cary, Mr. Maddox, is the lead lawyer on the case and is located in Gray Cary's Washington D.C. office—the same office that *simultaneously* does patent prosecution work for Aventis Pharmaceuticals. In addition, this is 2003, not 1983, and the various offices and lawyers of a large national law firm such as Gray Cary, particularly lawyers within a practice group, work together on a large number of projects and cases. With 2003 technology and the advent of universal electronic databases within a law firm, it is highly probable that confidential information can be obtained, even inadvertently, thereby making screening within a small office

15

of the integrated national law firm very problematical. In any event, the screening that is anticipated pursuant to Mass. R. Prof. C. 1.10, as was pointed out earlier, is not applicable in this situation. In sum, the risk here is simply too great to allow screening even if that remedy were available, which it is not.

## CONCLUSION

For the foregoing reasons, plaintiff Aventis Deutschland respectfully submits that the Court should disqualify Gray Cary from representing Cobalt in this case and revoke the *pro hac vice* admission of Steven A. Maddox.

Respectfully submitted,

*/s/ Wm. Shaw McDermott*
*/s/ Wendy Berliner*
Wm. Shaw McDermott (BBO# 330860)
Arnold R. Rosenfeld (BBO# 428860)
Wendy A. Berliner (BBO# 639853)
Kirkpatrick & Lockhart LLP
75 State Street
Boston, MA 02109
Tel. (617) 261-3100
Fax. (617) 261-3175

Joel Katcoff
Benjamin C. Hsing
Kaye Scholer LLP
425 Park Avenue
New York, New York 10022
Tel. (212) 836-8000
Fax. (212) 836-8689

*Attorneys for Plaintiff*
*Aventis Pharma Deutschland GmbH*

Dated: July 24, 2003

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 24, 2003, I caused true and correct copies of the foregoing to be served via First Class Mail on the following counsels:

>   Steven A. Maddox, Esq.
>   Gray Cary Ware & Freidenrich LLP
>   1625 Massachusetts Avenue, NW, Suite 300
>   Washington, DC 20036-2247
>   Tel. (202) 238-7700
>   Fax (202) 238-7701
>
>   Alan D. Rose
>   Michael L. Chinitz
>   Rose & Associates
>   29 Commonwealth Avenue
>   Boston, MA 02116
>   Tel. (617) 536-0040
>   Fax (617) 536-4400
>
>   Robert J. Muldoon, Jr., Esq.
>   Margaret H. Paget, Esq.
>   Sherin and Lodgen LLP
>   100 Summer Street
>   Boston, MA 02100
>   Tel. (617) 646-2000
>   Fax (617) 646-2222
>
>   F. Dominic Cerrito, Esq.
>   Brian M. Poissant, Esq.
>   John J. Normile, Esq.
>   Pennie & Edmonds LLP
>   1155 Avenue of the Americas
>   New York, NY 10036
>   Tel. (212) 790-9090
>   Fax (212) 869-9741

*/s/ Wm. Shaw McDermott*
Wm. Shaw McDermott