UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

<table>
<tr><td>

AVENTIS PHARMA DEUTSCHLAND GMBH
and KING PHARMACEUTICALS, INC.,

Plaintiffs,

v.

COBALT PHARMACEUTICALS, INC.,

Defendant.

</td><td>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)</td><td>Civil Action No. 03-10492-JLT</td></tr>
</table>

DEFENDANT COBALT PHARMACEUTICALS, INC.'S
MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION
TO DISQUALIFY GRAY CARY WARE & FREIDENRICH LLP

Gray Cary\SD\1569262.1
9999500-910400

I.      INTRODUCTION

Defendant Cobalt Pharmaceuticals, Inc. ("Cobalt") opposes Plaintiff's Motion to Disqualify Gray Cary Ware & Freidenrich LLP ("Gray Cary"), and relies on this Memorandum and the Declarations of Ian Jacobson, Joann F. Rezzo, Dean H. Nakamura and Brian L. Forbes, and the Affidavits of Gael Mahony and James R. DeGiacomo.

This is a patent case under the Hatch Waxman Act, brought by King Pharmaceuticals, Inc. ("King") to enjoin defendant Cobalt from selling generic ramipril capsules in competition with King's Altace® brand ramipril capsules.  Aventis Pharma Deutschland GmbH ("Aventis Germany"), is also a plaintiff, although it does not sell any competing products in the United States and damages are not available as a matter of law under the Hatch Waxman Act.  Aventis Germany is a second-level German subsidiary of the French multi-billion dollar, pharmaceutical giant, Aventis SA.  Like many global enterprises, Aventis SA has chosen to avail itself of tax and other legal benefits by creating more than a dozen separate subsidiary companies located around the world.

The Hatch Waxman Act provides a unique incentive to file motions like this one to disrupt and delay Cobalt's defense of the case on the merits.  Under the Act, Cobalt cannot obtain final FDA approval for 30 months or until it obtains a judgment in this case.[1]  King therefore can ensure its continued monopoly of a $450 million annual market of Altace® for as long as plaintiffs can prolong the litigation.[2]  With each extra week worth an additional $8

---

[1] See 21 U.S.C.§ 355(c)(3)(B) (filing patent case under Hatch Waxman Act stays FDA approval of defendant's generic drug application pending judgment or a period of two and a half years).

[2] See King Pharmaceuticals, Inc., Form 10-K for 2002 ("King Form 10-K") at 58, attached as Exhibit 1.

million in monopoly sales, it makes sense for plaintiffs to invest in even the slightest chance of forcing Cobalt to spend the time and money necessary to start all over again with new counsel.

Plaintiff Aventis Germany argues that Gray Cary's representation of Cobalt in this case violates Rule 1.7(a) of the Massachusetts Rules of Professional Conduct, which prohibits a lawyer from taking a representation "directly adverse" to a current client. Plaintiff's conflict theory is not based on any alleged representation of King, Cobalt's only market competition in the event that the FDA approves Cobalt's proposed generic drug. Nor is it based on any alleged representation of Aventis Germany, or even any parent company of Aventis Germany. It is undisputed that Gray Cary has never represented either King, Aventis Germany or any of their corporate parents. In order to premise this motion on an entity for which Gray Cary does any work, plaintiff had to go outside this case, up through two European corporate parents, halfway around the world, and back down to one of its French parent company's American subsidiaries, Aventis Pharmaceuticals, Inc. ("Aventis US") in New Jersey.

According to plaintiff, Gray Cary's defense of Cobalt is "directly adverse" to its client Aventis US. The official comment to Rule 1.7(a) makes clear, however, that a "directly adverse" representation is limited to the representation of opposing parties in litigation. Aventis US is not a party, and admits that it lacks any interest in the patent that would allow it to become a party.

Plaintiff tries to get around this critical fact in several ways. First, it argues that Aventis US has a direct interest in the outcome of the case. Yet, Aventis US is not even a potential competitor with respect to Cobalt's proposed generic ramipril here in the United States. Aventis US sold all of its United States rights in Altace® to King back in 1998 as part of a $350 million

deal.[3]  Further, Aventis US's supposed contractual right to a share of damages in this case is misleading at best.  As a matter of law, no damages are available in a Hatch Waxman Act case filed before FDA approval of the proposed generic drug, and thus before any commercial sales of the allegedly infringing product.

Second, plaintiff offers a conclusory declaration to the effect that Aventis US does an unspecified amount of capsule manufacturing for King.  Plaintiff chose not to offer any details and withheld the alleged agreements from its document production.  In public SEC filings, however, King describes Aventis US as merely a "backup" manufacturer to King's own FDA-approved manufacturing facility in Bristol, Tennessee.[4]  Here again, however, the official comments to Rule 1.7(a) make clear that the rule does not apply to generally adverse competing economic interests.  It is not surprising, therefore, that plaintiff fails to offer any authority to the effect that doing an unspecified amount of business as a contingent supplier to a party renders the supplier "directly adverse" under Rule 1.7 to the party's opponent in litigation.

Additionally, plaintiff suggests that Gray Cary should be considered as directly adverse to Aventis US in this litigation based solely on declarations describing an attenuated relationship between the Aventis in-house counsel managing this case and the in-house management of Gray Cary's unrelated work.  Because the companies are not parent and subsidiary, plaintiff does not even attempt to establish that the sister subsidiaries exercise any control over each other.  Instead, plaintiff traces a remote link between the management of the Cobalt litigation and

---

[3] *See* King Form 10-K, Exhibit 1, at 2.

[4] *See* King Pharmaceuticals, Inc., Form 10-Q for first quarter of 2003 ("King Form 10-Q") at 30, attached as Exhibit 2.

supervisors of the Aventis US work.  However, the declarations and publicly available information show that the day-to-day management of the Aventis Germany and Aventis US work is done by different lawyers, in different groups, in different departments, headed by different vice presidents, and sometimes in different locations.

Finally, plaintiff relies on pure speculation that the ethical wall erected by Gray Cary is not sufficient to protect Aventis Germany from any prejudice in the case and to guard against any potential misuse of client confidential information provided by Aventis US.  Indeed, plaintiff does not identify any alleged prejudice or potential misuse of information.  Yet, plaintiff insists that the only appropriate remedy is to prejudice Cobalt's defense of the case by separating Cobalt from its counsel of choice, with whom Cobalt has been working since last October.  Even upon finding a violation of Rule 1.7, courts do not necessarily impose the drastic remedy of disqualification, particularly where, as in this case, the motion imposes prejudice on an innocent third party rather than preventing any alleged prejudice.

Aventis Germany has not established a violation of Rule 1.7, or the need for the drastic measure of disqualification.  Gray Cary's implementation of an ethical wall is sufficient to protect any confidences of Aventis US and avoid unfair prejudice to Cobalt.  Disqualification is an extreme sanction that is unwarranted based on the circumstances of this case.  The motion should be denied.

II.    <u>MOTIONS FOR DISQUALIFICATION ARE DISFAVORED.</u>

"When deciding on a motion for disqualification, a court should proceed with caution." *Moss v. TACC Int'l Corp.*, 776 F.Supp. 622, 624 (D. Mass. 1991).  Since disqualification has an immediate adverse effect on the client by separating him from the counsel of his choice and because many times such motions are "made for tactical, not substantive, reasons and will most

likely cause delay in the litigation" courts have been reluctant to disqualify attorneys. *See id.* *See also Research Corporation Technologies, Inc. v. Hewlett-Packard Co.,* 936 F. Supp. 976, 701 (D. Ariz. 1996) (disqualification can result in increased expenses, delay in resolution of proceedings and deprivation of choice of counsel); *NFC, Inc. v. General Nutrition, Inc.,* 562 F.Supp. 332, 334 (D. Mass. 1983) (Tauro, J.) (this Court held that when a less drastic alternative than disqualification will preserve the ethical standards of the profession, it should be utilized). Only in extreme circumstances should a party to a lawsuit be allowed to interfere with the attorney-client relationship of an opponent. *Research Corporation Technologies, Inc.,* 936 F. Supp. at 701.

The mere possibility of a conflict is insufficient to justify the harsh sanction of disqualifying a party's chosen counsel. The moving party must meet the heavy burden of proving facts that disqualify counsel. *Id.* (the moving party must show sufficient reason why an attorney should be disqualified); *Evans v. Artek Sys. Corp.,* 715 F.2d 788, 794 (2d Cir. 1983)(moving party bears a heavy burden of proving facts required for disqualification); *Gov't of India v. Cook Indus., Inc.,* 569 F.2d 737, 739 (2d Cir. 1978) (a high standard of proof is required to disqualify counsel); *Paretti v. Cavalier Label Co.,* 722 F. Supp. 985, 987 (S.D.N.Y. 1989) ("mere speculation will not suffice").

III.   GRAY CARY IS NOT DIRECTLY ADVERSE TO A CLIENT IN THE COBALT LITIGATION.

Plaintiff moves to disqualify Gray Cary on the contention that Gray Cary is in violation of Massachusetts Supreme Judicial Court Rule 1.7(a), which prohibits a lawyer from representing a client if the representation of that client will be <u>directly adverse</u> to another client. (Emphasis added.) The facts, however, demonstrate that Gray Cary's representation of Cobalt is not directly adverse to its client Aventis US and Rule 1.7(a) does not apply. *See* Comment 3,

Massachusetts Supreme Judicial Court Rule 1.7 ("Paragraph (a) applies only when the representation of one client would be directly adverse to the other.").

A.   <u>Gray Cary's representation of Cobalt Pharmaceuticals is directly adverse to King and Aventis Germany – not Aventis US.</u>

Plaintiffs Aventis Germany and King sued Cobalt for infringement of United States Patent No. 5,061,722 ("the '722 patent").  Aventis Germany alleges it is the owner of the '722 patent and King alleges it has the exclusive license to make and sell the product of the patent in the United States.  Aventis Germany and King are the only parties directly adverse to Cobalt in this litigation.

Aventis Germany and King are not now, nor have they ever been, clients of Gray Cary.  *See* Declaration of Brian L. Forbes at ¶ 6, filed in support of this opposition.  There is no contention that Gray Cary has, or ever had, an attorney-client relationship with Aventis Germany or King.

B.   <u>Aventis Germany and Aventis US are separate corporations and not alter egos.</u>

Aventis Germany is a German corporation and the wholly-owned subsidiary of the German corporation Hoechst AG, which is a wholly-owned subsidiary of the French corporation, pharmaceutical giant, Aventis S.A.  Aventis US is a separate corporation and a wholly-owned United States subsidiary of Aventis S.A.  The chart below shows the relationship of the entities.[5]

---

[5] *See* Aventis, Form 20-F for 2002, ex. 8, attached as Exhibit 3.



It is undisputed that Aventis US and Aventis Germany are separate corporate entities. They are not alter egos. Aventis Germany has not, and cannot, contend that Gray Cary's representation of Aventis US creates an attorney-client relationship with Aventis Germany.

This is critically different from the circumstances of *Teradyne, Inc. v. Hewlett-Packard Co.*, 1991 WL 239940 (N.D. Cal.). The law firm representing plaintiff Teradyne concurrently represented a subsidiary of defendant parent company HP. *Id.* at 1. The court concluded that HP's pervasive control over the subsidiary justified disregarding corporate form and deemed parent corporation HP a client of a law firm for conflict purposes. *Id.* at 4-5. Consequently the law firm's representation of plaintiff Teradyne against defendant HP was directly adverse to a client.

Plaintiff does not assert that Aventis US controls Aventis Germany such that their separate corporate identities should be disregarded and Aventis Germany should be considered a Gray Cary client for conflict purposes. Aventis Germany and Aventis US are distinct and separate corporate entities. They are not a single client for conflict purposes. Gray Cary's duty of loyalty to Aventis US is not violated by its representation of Cobalt against Aventis Germany and King.

C.  The scope of ethical inquiry regarding whether there is a violation of Rule 1.7 is properly limited to whether the client is a party to the case or transaction.

There is no attorney-client relationship between Gray Cary and the plaintiff parties in the case. Plaintiff contends that non-party Gray Cary client Aventis US has "a strong interest and is heavily involved in the [Cobalt] litigation," such that Gray Cary's representation of Cobalt is directly adverse to Aventis US. *See* Plaintiff's Memo at 5. But, Aventis US is not a party to this litigation. The significance of this should not be disregarded since under the rules: "Paragraph (a) prohibits representation of opposing parties in litigation." Comment 7, Massachusetts Supreme Judicial Court Rule 1.7 (emphasis added).

This fundamental requirement of party identification was highlighted in a Formal Opinion of the Standing Committee on Professional Responsibility and Conduct of the California State Bar, regarding whether the duty of loyalty to a parent corporation is violated by bringing suit against a subsidiary. "Legal authority interpreting the duty of loyalty limits the scope of ethical inquiry to whether the other affected clients are parties to the case or transaction in which the attorney is acting." CA. Eth. Op. 1989-113, 1989 WL 253261 at 4 (Cal. St. Bar Comm. Prof. Resp.). The attorney's duty of loyalty extends only to direct adversity, the scope of which is limited to party identification. *Id.*

The cases cited by plaintiff in its discussion of the duty of loyalty clearly illustrate this principle that party identity is required for direct adversity. *See* Plaintiff's Memo at 8-9. Those cases uniformly address circumstances in which the firm was concurrently representing both parties to the litigation. *McCourt Co. v. FPC Properties, Inc.*, 386 Mass. 145, 147 (1982) (law firm had concurrent attorney-client relationship with the defendant, while suing same client on behalf of plaintiff); *Ferguson Electric Co. v. Suffolk Construction Co.*, 1998 WL 140101 at 2 (Mass.Super.) (conflict arose when firm agreed to defend Suffolk in a lawsuit brought by its current client, Ferguson); *British Airways PLC v. The Port Authority of New York and New Jersey*, 862 F.Supp. 889, 891 (E.D.N.Y. 1994) (law firm represented the Port Authority in a number of personal injury actions while concurrently suing it on behalf of British Airways); *International Business Machines Corp. v. Levin*, 579 F.2d 271, 277 (3d Cir. 1978) (law firm represented IBM while at the same time defending Levin against suit by IBM).

As a non-party, any interests of Aventis US in the outcome of the Cobalt litigation are by definition indirect and therefore do not create a conflict under Rule 1.7, much less mandate the extreme and harsh step of disqualification. *See* Affidavit of James R. DeGiacomo at ¶ 7, filed in support of this opposition.

IV.    EVEN DISREGARDING ITS NON-PARTY STATUS, THE ALLEGED INTERESTS OF AVENTIS US IN THIS LITIGATION DO NOT CREATE A CONFLICT.

Plaintiff presents Aventis US as an undisclosed "real party in interest" in this litigation. The plaintiff contends that Aventis US has interests in the outcome of the litigation that are sufficient to make Gray Cary's representation of Cobalt a matter of direct adversity to Aventis US despite its non-party status. The interests of Aventis US in this litigation are indirect at best and do not sustain a claim of direct adversity under Rule 1.7.

A.   <u>Whatever legal or financial interest Aventis US has in the Cobalt litigation, it does not amount to direct adversity.</u>

Plaintiff first argues that Aventis US has an ownership interest in the Cobalt litigation. Solely by virtue of Aventis US being named in the Aventis Germany license agreement with King, in which Aventis Germany grants King the exclusive U.S. marketing rights to Altace®, plaintiff claims that Aventis US has the "right to prosecute, control and settle [the Cobalt] litigation, as well as the right to share in any damages awarded." *See* Plaintiff's Memo at 7. It is noteworthy that Aventis US is an independent entity in this "three-way" agreement and executed it as a separate entity. This highlights the separateness of the corporate identities of Aventis US and Aventis Germany and the reality of their individual management and control.

Plaintiff's characterization of the rights and interests of Aventis US pursuant to the license agreement notwithstanding, the fact remains that Aventis US is not an owner of the patent at issue in this litigation. Only the owner of the patent and in certain circumstances the exclusive licensee have standing to bring a patent infringement suit. 35 U.S.C. § 281. Aventis Germany admits it has not conveyed ownership rights to Aventis US. *See* Plaintiff's Memo at 5 ("[Aventis US] is not the holder or exclusive licensee of the patent, and therefore does not have standing to sue in this case."). As Aventis US has no ownership interests in the patent, any claim that Aventis US controls and can settle the Cobalt litigation is illusory at best, since only the patent owner, Aventis Germany, can release Cobalt from any infringement claims.

Additionally, whether or not Aventis US has a contractual right to share in damages for infringement of the '722 patent, that interest is irrelevant to the litigation at hand. The claim against Cobalt arises under 35 U.S.C. § 271(e), which expressly limits remedies to injunctive relief and an order delaying FDA approval until after expiration of the patent. *See* 35 U.S.C. § 271(e)(4)(A) and (B). Damages are not available unless "there has been commercial

manufacture, use, offer to sell, or sale within the United States of an approved drug." 35 U.S.C. § 271(e)(4)(C). Cobalt has not – and is not alleged to have – engaged in any commercial conduct that would give rise to a claim for damages.[6]  Therefore, Aventis US has no direct financial stake in this litigation.

Second, through the unsupported declaration of Tanja Weber, plaintiff claims that there is a manufacturing agreement between Aventis US and King which creates the requisite direct adversity. This agreement was not provided to the court or produced to Cobalt.[7]  Ms. Weber's declaration simply asserts that an ongoing manufacturing relationship exists, but the declaration is intentionally vague about the nature of the relationship. *See* Weber Dec. at ¶ 7 ("Aventis [US] manufactures certain quantities of Altace® finished product for King").  Through King's public documents, Cobalt has learned that King manufactures its own Altace® and uses the Aventis US Kansas City, Missouri, facility only as an alternative, or back-up supplier. [8]

Although an adverse decision may have some indirect economic effect on Aventis US as King's back-up supplier, a generalized economic interest (especially if contingent and undefined, as in this case) does not make Gray Cary's representation of Cobalt a violation of the firm's duty of loyalty to Aventis US. "Simultaneous representation in unrelated matters of clients whose interests are only generally adverse, such as competing economic enterprises, does not require

---

[6] See Declaration of Ian Jacobson at ¶¶ 1 & 2, filed in support of this opposition.

[7] Plaintiff did not produce any documents or identify any witnesses that evidence an ongoing manufacturing relationship between Aventis US and King in either the Initial Disclosures or in response to Cobalt's discovery requests.  Despite plaintiff's assertion that Cobalt's discovery requests should be interpreted to include Aventis US, no Aventis US documents have been produced.  Plaintiff did not believe the discovery extended to Aventis US or the plaintiff has withheld documents.

[8] *See* King Form 10-Q, Exhibit 2, at 30 ("Aventis (USA) in Kansas City, Missouri, is our alternative, or back-up FDA-approved manufacturing and packaging site for Altace®").

consent of the respective clients." Comment 3, Massachusetts Supreme Judicial Court Rule 1.7. To conclude otherwise would put attorneys in the impractical, if not impossible, position of having to determine if existing clients have any indirect financial interest in the outcome of litigation to which they are not parties, before attorneys take on representation of a litigation client.

> If such indirect adverse consequences were prevented by the duty of loyalty, attorneys would be conflicted out of representations where the indirect adverse impact was slight and unpredictable. Moreover, there would be no way to construct any meaningful standard to distinguish among indirect consequences.

CA. Eth. Op. 1989-113, 1989 WL 253261 at 4.

Plaintiff admits Aventis US does not own the patent at issue, and has no standing in this lawsuit. The purported "strong interest" of Aventis US in this lawsuit is an uncertain, derivative, indirect financial interest and there is no showing of how it would necessarily be harmed by this litigation. Plaintiff has not met its burden to show that Gray Cary's representation of Cobalt is directly adverse to the legal or financial interests of Aventis US.

B.    <u>Whatever control Aventis US is exercising in the Cobalt litigation, it does not amount to direct adversity.</u>

In addition to the interests discussed above, plaintiff contends that Aventis US is in actuality the undisclosed master of this litigation – directing, supervising and financing the lawsuit on behalf of the named plaintiffs. This alleged behind-the-scenes control is proffered as evidence that Aventis US has interests in this litigation that make Gray Cary directly adverse to Aventis US.

Significantly, plaintiff has not argued that this alleged control requires that the separate corporate forms of Aventis Germany and Aventis US should be disregarded and the two distinct corporations should be treated as alter egos. Consequently, although plaintiff relies on the

*Teradyne* case, 1991 WL 239940, it has not made the critical argument of that case. *Teradyne* is about determining the "identity of client." *Id.* at 3. In *Teradyne*, the court determined that parent HP's control of its very integrated subsidiary (including legal services) made the companies one entity for conflict purposes and therefore party defendant HP was a client of the firm.[9] *Id.* at 4–5. There is no contention here that Aventis Germany is so pervasively controlled by Aventis US that it should be deemed a client of Gray Cary.

1.   The Aventis Global Patent Litigation Department is supervising the Cobalt litigation on behalf of Aventis Germany.

The Aventis Global Patent Litigation Department is based at an Aventis US office in Bridgewater, NJ.[10] This department, according to plaintiff, supervises and controls all patent litigation that involves almost any Aventis entity anywhere in the world. *See* Dahling Declaration at ¶ 6.

Michael Bankmann, a patent counsel for named plaintiff Aventis Germany, and Carolyn Moon, Senior Director of Global Patent Litigation, are supervising the firms of Kaye Scholer and Kirkpatrick & Lockhart in the Cobalt litigation on behalf of Aventis Germany. *Id.* at ¶ 8.

Mr. Bankmann and Ms. Moon report to Louis J. Wille, Vice President of the Global Patent Litigation Department. Mr. Wille is responsible for the patent-related litigations of almost

---

[9] Plaintiffs also cite the court to *Colorpix Systems of America v. Broan Mfg. Co.*, 131 F.Supp.2d 331 (D.Conn. 2001). *Colorpix*, however, is not applicable. The analysis in *Colorpix* is whether there was a violation of Rule 1.9, not Rule 1.7. The firm had previously represented defendant Broan's parent on substantially-related litigation. The court found Broan to be a vicarious client of the firm (sharing the same vice president, secretary and general counsel as its parent corporation) and the litigation essentially the same as the matter the firm handled for Broan's parent. Here there is neither an assertion that Aventis Germany is a vicarious client or that the work done for Aventis US is substantially related to the litigation.

[10] The information about the structure of the Aventis legal groups is based on the declarations filed by Aventis Germany and the "martindale.com" listing for Aventis, Inc., attached as Exhibit 4.

all the Aventis entities worldwide, and administers the budget for such litigations. *See* Dahling Dec. at ¶¶ 6, 8 and 9.

Mr. Wille reports to Gerald V. Dahling, Sr. VP, Global Patents. Mr. Dahling heads all the worldwide Aventis patent groups, including U.S. Patent Operations, German Patent and Licensing, the French Patent Department, as well as the Global Patent Litigation Department. *Id.* at ¶ 5.

Gray Cary has never had any communications or done any work with Mr. Wille, Ms. Moon or any other members of the Global Patent Litigation Department, or Aventis Germany patent counsel Mr. Bankmann. None of these individuals directly supervise or manage any Gray Cary attorneys in the work they do for Aventis US.[11]

2. <u>Gray Cary's work for Aventis US is unrelated to the Cobalt litigation and is not directly managed or supervised by any Aventis attorney involved in the Cobalt litigation.</u>

a. <u>Gray Cary's representation of Aventis US is unrelated to the Cobalt litigation.</u>

Gray Cary's San Diego office has been retained as local counsel to the law firm of Stinson Morrison & Hecker representing Aventis US in an antitrust litigation filed in California. This antitrust litigation is entirely unrelated to the '722 patent. *See* Rezzo Dec. at ¶ 3. Gray Cary is also currently preparing three patent applications for Aventis US. This work is entirely unrelated to the issues in this case. *See* Nakamura Dec. at ¶ 4.

There is no allegation that through its representation of Aventis US on these unrelated matters, Gray Cary obtained any confidential information regarding Aventis Germany that may

---

[11] See Declarations of Joann F. Rezzo at ¶¶ 5 and 6, and Dean H. Nakamura at ¶¶ 5 and 6, filed in support of Cobalt's opposition.

prejudice Aventis Germany's interests in the Cobalt litigation. Any concern about the possibility of confidential information being potentially shared by Gray Cary attorneys has been alleviated by the firm's implementation of an ethical wall to address that issue. (*See* Section V, *infra*.) *See* DeGiacomo Affidavit at ¶ 8; Affidavit of Gael Mahony at ¶¶ 7-8, filed in support of this opposition.

          **b.**    <u>Supervision of the Aventis US antitrust litigation is separate from the supervision of the Aventis Germany v. Cobalt patent litigation.</u>

Susan Manardo, Corporate Counsel in the Aventis Inc. – Global Litigation Department, which is based at a different location than the Global Patent Litigation Department,[12] is supervising the Aventis US antitrust litigation in which Gray Cary was retained as local California counsel. *See* Manardo Dec. at ¶¶ 4-6. Gray Cary reports to primary national counsel Stinson Morrison & Hecker, in Kansas. *See* Rezzo Dec. at ¶ 4. Although Ms. Manardo claims to have day-to-day supervisory responsibility for the antitrust litigation, the Gray Cary attorneys supporting the Stinson firm have had no direct communications with her. *Id.*

Ms. Manardo reports to Stephen Reynolds, Vice President and Chief Litigation Counsel for the Global Litigation Department. *See* Manardo Dec. at ¶ 4. Mr. Reynolds does not supervise patent litigation in his group. Neither Mr. Reynolds nor Ms. Manardo is supervising or managing the Cobalt litigation. Nor does Mr. Reynolds report to the head of Aventis patent-related matters, Mr. Dahling. *Id.*

---

[12] *See* Exhibit 4, at 1.

c.  <u>Supervision of the Aventis US patent work is separate from the supervision of the Aventis Germany v. Cobalt patent litigation.</u>

Gray Cary is currently preparing three patent applications for Aventis US.[13] *See* Nakamura Dec. at ¶4. The subject matter of the applications is unrelated to the issues in this case. *Id.* The Gray Cary attorney involved in that work reports to Karen Krupen, director of the U.S. Patent Department. *Id.* at ¶ 5. Ms. Krupen is not involved in the Cobalt litigation. None of the 14 members of Ms. Krupen's group are involved in the Cobalt litigation.

Ms. Krupen reports to Ross Oehler, Vice President of U.S. Patent Operations, who has responsibility for U.S. patent and licensing matters. Mr. Oehler is not involved in the Cobalt litigation. U.S. Patent Operations is not controlling or supervising the Cobalt litigation.

Mr. Oehler, however, reports to Mr. Dahling. It is at this extremely high and remote level of management that there exists the only intersection between Gray Cary's work for Aventis US and the management of the Cobalt litigation. According to his Declaration, Mr. Dahling "supervises" <u>all</u> patent-related matters – prosecution, licensing and litigation – for <u>all</u> Aventis entities <u>worldwide.</u> *See* Dahling Dec. at ¶¶ 4 and 5.

Thus, plaintiff argues that because:

- the person who supervises a Gray Cary attorney on unrelated patent filing matters on behalf of Aventis US (Ms. Krupen) reports to a person (Mr. Oehler) who in turn reports to the head of all global patent-related matters for all Aventis entities (Mr. Dahling), and

- the persons who supervise Kaye Scholer and Kirkpatrick & Lockhart in this litigation (Mr. Bankmann and Ms. Moon) on behalf of Aventis Germany report to a person (Mr. Wille) who in turn also reports to Mr. Dahling (*illustrated on the following page*),

---

[13] This patent work came to Gray Cary in February 2003, when Dean Nakamura joined the firm and brought the matters with him. *See* Nakamura Dec. at ¶¶ 2-3.



it necessarily follows that "the management of this lawsuit is handled at the same level of the Aventis enterprise as the management of the Gray Cary matters." *See* Plaintiff's Memo at 12.

The day-to-day management of these unrelated matters is, however, performed by completely separate departments at completely different levels of the Aventis organization. There are no Aventis US attorneys working directly with Gray Cary attorneys who are managing or supervising this litigation on behalf of Aventis Germany.

This lack of active management is crucial because the core policy concern in conflict-of-interest laws is the protection of client privacy.

> When different faces represent the corporations in each litigation, the firm is less likely to feel any divided loyalty that could affect its representation. ... A case such as this where the general counsel is a supervisor rather than active participant in the litigation is at a polar extreme from the case in which an individual has a personal relationship with the particular attorney who provides for all ... of that client's legal needs.

*Reuben H. Donnelley Corp. v. Sprint Publishing & Advertising, Inc.*, 1996 WL 99902 at 3 (N.D. Ill.) (finding separate entities should not be treated as a single client for purposes of Rule 1.7).

V.   DISQUALIFICATION WOULD PREJUDICE COBALT AND IS NOT WARRANTED.

This Court has stated that "care should be taken to avoid applying the disqualification sanction of the Code in a mechanical, computerized fashion. Rather, the factors affecting a particular set of relationships should be carefully analyzed with the purpose of arriving at an individualized judgment and a truly responsive remedy." *NFC, Inc.*, 562 F.Supp. at 334. Other

courts around the country have similarly concluded that disqualification does not automatically follow from a finding of conflict.[14]

> There are basically two purposes behind Rule 1.7. First it serves as a prophylactic to protect confidences that a client may have shared with his or her attorney. . . . The second purpose behind Rule 1.7 is to safeguard loyalty as a feature of the lawyer-client relationship. A client should not wake up one morning to discover that his lawyer, . . . has sued him.

*SWS Financial Fund*, 790 F. Supp. at 1401.

There is no justification for disqualification in this case. First, Gray Cary's representation of Cobalt does not violate its duty of loyalty to Aventis US. Gray Cary has not sued Aventis US. There is no direct adversity in this situation. Nor has there been any indication that going forward Gray Cary attorneys will be less effective in their role as local counsel on the unrelated Aventis US antitrust litigation matter or in the preparation and filing of the unrelated patent matters in progress for Aventis US.

Second, Aventis Germany has not identified any confidential information related to the Cobalt litigation that has been or might be disclosed to the Cobalt litigation team as a result of Gray Cary's work for Aventis US. Moreover, Gray Cary has voluntarily implemented screening measures to avoid any assertion of alleged use or disclosure of any confidential information.

---

[14] *See, e.g., Elonex IP Holdings Ltd. v. Apple*, 142 F.Supp. 2d 579, 583 (D. Del. 2001) (sanctions should be fair and just to all parties involved; even if the firm violated 1.7(a) disqualification was not warranted); *Research Corporation Technologies*, 936 F. Supp. at 703 (the court should consider the facts and circumstances of each case to determine whether the harsh sanction of disqualification is warranted; motion denied); *SWS Financial Fund v. Salomon Brothers Inc.*, 790 F. Supp. 1392, 1401 (N.D. Ill. 1992) (a court should look to the purposes behind rule 1.7 to determine if disqualification is desirable; motion denied); *Reuben H. Donnelley Corp.*, 1996 WL 99902 at 4 (even if a conflict had been found, court would have denied disqualification motion based on plaintiff's stronger interest in keeping counsel of its choice); *Gen-Cor, LLC v. Buckeye Corrugated, Inc.*, 111 F. Supp. 2d 1049, 1055 (S.D. Ind. 2000) (a violation of 1.7 need not result in disqualification; motion denied.)

Gray Cary attorneys working on the Cobalt matter and Gray Cary attorneys working on matters for Aventis US are not only screened from each other, but are required not to communicate with anyone at Gray Cary about their matters except for members of their actual teams working on the particular matter and then only on a need-to-know basis. *See* Forbes Dec. at ¶¶ 7-8 and Exhibits A, B and C, thereto. *See also* DeGiacomo Affidavit at ¶ 8; Mahony Affidavit at ¶¶ 7-9.

Finally, the extreme sanction of disqualification will result in costs to an innocent third party. "The innocent client [Cobalt] may suffer delay, inconvenience and expense and will be deprived of its choice of counsel. When disqualification is granted, sometimes the new attorney may find it difficult to master fully the subtle legal and factual nuances of a complex case." *SWS Financial Fund*, 790 F. Supp. at 1400.

Cobalt has been working with the Maddox-Rosen litigation team since October 2002. These attorneys were selected due to their special expertise in generic drug regulation and experience with cases brought under the Hatch Waxman Act. Cobalt has been working extensively with Maddox and Rosen, planning regulatory and litigation strategies for this and other matters. *See* Jacobson Dec. at ¶¶ 4-6. If forced to obtain new counsel, Cobalt will lose both its investment in Maddox and Rosen educating them about Cobalt's business operations and plans, and the benefit of having these attorneys, who are particularly knowledgeable about this field of patent law, representing Cobalt's interests. Disqualification of counsel serves to destroy a relationship by depriving a party of representation of its own choosing. *See SWS Financial Fund*, 790 F. Supp. at 1400.

> A fundamental premise of the adversary system is that individuals have the right to retain the attorney of their choice to represent their interests in judicial proceedings. ... When a trial court mistakenly disqualifies a party's counsel as the result of an abusive disqualification motion, the court in essence permits the party's

opponent to dictate his choice of counsel. . . . [T]his result is in serious tension with the premises of our adversary system.

*Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 441 (1985) (Brennan, J., concurring).

## VI.   CONCLUSION

The plaintiff has not met its burden to prove that Gray Cary's concurrent representation of Cobalt and Aventis US, on unrelated matters, gives rise to an ethical conflict under Rule 1.7 requiring the harsh penalty of disqualification. Nor has plaintiff provided any rationale why the ethical wall implemented by Gray Cary is inadequate to address any concerns regarding the preservation of client confidences. The motion for disqualification of Gray Cary Ware & Freidenrich LLP and the revocation of the *pro hac vice* admission of Steven A. Maddox should be denied.

Respectfully submitted,

Alan D. Rose (BBO #427280)
Michael L. Chinitz (BBO#552915)
Rose & Associates
29 Commonwealth Avenue, 6th Floor
Boston, Massachusetts 02116
Telephone: 617-536-0040
Facsimile:  617-536-4400

Steven Maddox (admitted *pro hac vice*)
Gray Cary Ware & Freidenrich LLP
1625 Massachusetts Avenue, N.W. - Suite 300
Washington, DC  20036-2247
Telephone: 202-238-7700
Facsimile: 202-238-7701

Attorneys for Defendant
Cobalt Pharmaceuticals, Inc.

Dated: August 15, 2003

Gray Cary\SD\1569262.1
9999500-910400

20

### CERTIFICATE OF SERVICE

I hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party by mail/by hand, or overnight.

Date: 8·15·2003      Alan D. Rose